# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### WESTERN DIVISION

| | | |
|---|---|---|
| Gregory McAdory | ) | |
| Plaintiff, | ) | |
| | ) | No. 18 CV 50269 |
| v. | ) | Judge Iain D. Johnston |
| | ) | |
| Gary Caruana, et al., | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

The plaintiff alleges that the defendants were deliberately indifferent by failing to properly treat his back injuries and continuing pain. The defendants contend that the plaintiff failed to administratively exhaust that claim, and seek summary judgment under Federal Rule of Civil Procedure 56 on their affirmative defense of failure to exhaust. Dkt. 35. For the reasons that follow, the defendants' motion for summary judgment is denied.

## BACKGROUND

The Court is hard pressed to recount the events that led to plaintiff Gregory McAdory's claim of deliberate indifference because he did not set out his version of events in a Rule 56.1 statement of additional facts. But the parties' dispute on exhaustion does not turn on the background facts, so the Court will also draw from allegations in the plaintiff's complaint. Mr. McAdory was a pretrial detainee at the Winnebago County jail from July 19, 2016, to December 1, 2017. Pl. Resp. to Def. Statement of Facts ("SOF") [38] ¶ 1. He alleges that on August 28, 2016, he slipped and fell in the shower. First Am. Compl. [11] ¶ 10. The plaintiff alleges that he spent months seeking medical attention, but the physician who served inmates at the jail, Dr. Kenton Lee, never appropriately diagnosed or treated his back pain. Id. ¶ 29. He also contends that defendant sheriff Gary Caruana maintained a custom and practice of withholding appropriate diagnoses and treatments. Id. ¶ 23. The plaintiff was later transferred to the Sheridan Correctional Center, and in response to his complaints of back pain the doctor there x-rayed his back. Id. ¶¶ 16-17. The x-ray revealed a fracture on his upper spine. Id.

On the day after his fall, the plaintiff submitted a grievance reporting his fall, complaining about his back pain, and asking to see a doctor. SOF ¶ 17. The grievance actually spanned four different grievances submitted electronically just a few minutes apart at a kiosk in the jail. Id. ¶¶ 4,[1] 17. On September 7, 2016, the plaintiff submitted another medical grievance again complaining of back pain as well as a hand that was swollen and aching ever since his fall.

---

[1] In response to the defendants' statement of fact that the jail maintained computerized kiosks at which inmates submit grievances, appeals, and service requests, the plaintiff responded, "Plaintiff denies he was ever informed that the Inmate Handbook was on the kiosks." Because he did not identify record evidence to support his denial, or even respond to the assertion that inmates submit grievances on kiosks, the defendant's statement is deemed admitted. See Local Rule 56.1(b)(3)(B).

*Id.* ¶ 18. In response, he was directed to fill out a medical request to see a nurse or provider in the clinic. *Id.* On December 15, 2016, the plaintiff filed a third grievance about his back in which he reported the following: "I told the doctor about my knee hand and my back he got the paper work from the hospital about my knee I need to get my knee fixed." *Id.* ¶ 19. In response, he was advised "your chart will be put in for review for the doctor." *Id.* The plaintiff admits those were the only three grievances he submitted about his back injury and pain. *Id.* ¶ 20. He further admits that he never appealed any of those grievances. *Id.* ¶ 42.

In addition to those three grievances, the plaintiff submitted 17 medical requests about his back and pain beginning August 28, 2016, through November 22, 2017. *Id.* ¶¶ 23-39. Medical requests are logged by the jail separately from medical grievances. Dkt. 37 (Def. Statements of Fact), Ex. A at Bates Numbers HRVA246-54.

## ANALYSIS

The Prison Litigation Reform Act requires prisoners to exhaust all administrative procedures available to them before they pursue their claims in federal court. *See* 42 U.S.C. § 1997e(a); *Pavey v. Conley*, 544 F.3d 739, 740 (7th Cir. 2008). To exhaust available administrative procedures, a prisoner must comply with the procedures and deadlines set forth in the prison's policies. *Hernandez v. Dart*, 814 F.3d 836, 842 (7th Cir. 2016). Exhaustion is a precondition to filing suit in federal court, thus an inmate may not exhaust the administrative procedures after filing suit. *Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004). The Seventh Circuit requires strict compliance with available exhaustion procedures. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). However, a prisoner needs to exhaust only those administrative procedures that are "available." 42 U.S.C. § 1997e(a). In *Ross v. Blake*, 136 S. Ct. 1850 (2016), the Supreme Court gave examples of instances in which administrative procedures are not available: (1) when the administrative procedures are a dead end, such as when officers are unable or unwilling to provide relief; (2) when the administrative scheme is so confusing that it becomes incapable of use; and (3) when prison administrators thwart inmates from taking advantage of the administrative procedures through "machination, misrepresentation, or intimidation." *Id.* at 1859. The defendant bears the burden of proving a prisoner failed to exhaust the available administrative procedures. *Turley v. Rednour*, 729 F.3d 645, 650 (7th Cir. 2013).

The Winnebago County jail churned through no less than six different grievance procedures during the plaintiff's 17 month stay, some that were effective only for a few days: one was in effect from when the plaintiff arrived through March 28, 2017, SOF 9; replaced by one in effect through July 23, 2017, SOF 10; replaced by one in effect through November 9, 2017, SOF 11; replaced by one in effect through November 27, 2017, SOF 12; replaced by one in effect through November 30, 2017, SOF 13; replaced by one in effect through the plaintiff's transfer away from the jail, SOF 14.[2] With one notable exception, they all set forth a similar three-step process: (1) prisoners should first attempt to resolve problems in an informal manner; (2) if the problem is not adequately resolved, within five days of the incident the prisoner may file a grievance at a kiosk giving a thorough explanation of the problem; and (3) the prisoner will

_____

[2] Again, the plaintiff failed to dispute these six statements of fact with citations to the record, so they are all deemed admitted.

receive a response within seven business days, and if the problem remains unresolved the prisoner may appeal the grievance decision to the jail superintendent by using the kiosk. Dkt. 37 (Def. Statements of Fact), Ex. A at Bates Numbers HRVA271-76. The exception is the grievance procedure in effect from March 29, 2017, through July 23, 2017, which while it states that appeals are available, removed the explanation of how to file one. *Id.* at HRVA272.

The defendants contend that the plaintiff failed to exhaust because (1) none of his grievances complained of a failure to treat his back condition or requested diagnostic testing of his back; and (2) he never appealed any of the three grievances. Motion [Dkt.36] at 2. The Court addresses each argument in turn.

First, the defendants argue that the plaintiff failed to exhaust because, while his grievances complained of back pain, they did not specifically complain about a lack of treatment for his pain or request diagnostic testing such as an x-ray. The defendants refer to *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1992), for the proposition that even the best treatments may leave a patient in pain, and that without a grievance from the plaintiff specifying that he was not receiving appropriate treatment, for all anyone knew he may have been pleased with the quality of his medical care. Motion [Dkt.36] at 6-7. But it is clear from the grievances that the plaintiff did not file them to report that he was pleased with his care. His four-part grievance filed August 29, 2016, included reports that when he "woke up from taking a long nap my back was in great pain and that's all the nurse could do for me was a bag of ice." Dkt. 37, Ex. A at Bates Number HRVA247.. He went on to report that he "need[s] to see a doctor for my back. The nurse came today and gave me a pain pill that did not help." *Id.*. The jail responded by directing him to file a sick call request, which he did repeatedly to report that his "back hurts really bad from falling 2 days ago," (filed 8/30/2012); "I wake up every day in pain," (filed 9/6/2016); "I have a bad pinching in my back on my spine," (filed 10/7/2016); "I have been having really bad back pains in my upper back I need to see a doctor about," (filed 11/30/2016), "My back has been in a lot of pain and knee is causing my other knee to have pain in it when will I be treated," (medical request 12/21/2016), and so on. *Id.* at HRVA249-51. Mr. McAdory's reports of continuing pain, his repeated requests to see a medical professional, and his questioning "when will I be treated" evidence his dissatisfaction with the treatment he was receiving.

The defendants contend that the grievances did not satisfy the grievance procedure's requirement that an inmate thoroughly explain his problem because Mr. McAdory "did not file any grievances which address the allegations of wrongdoing he advances in his First Amended Complaint," which they note were that "Dr. Lee failed to order the appropriate diagnostic testing to appropriately diagnose and treat Plaintiff's condition." Motion [36] at 5. But none of the six different grievance procedures in effect during Mr. McAdory's stay required an inmate to specify the diagnostic tests the inmate thought were needed, a point the defendants concede. Motion [Dkt. 36] at 7 ("Plaintiff does not have to request particular treatment in order to sufficiently grieve a complaint . . . [or] demand a certain type of care.") The jail's grievance procedure does not define "thorough," and in the absence of more detail in the jail's grievance procedure, it is difficult to know what specificity the procedure requires. *Strong v. David*, 297 F.3d 646, 649 (7th Cir. 2002) ("the rules come from the prison grievance systems themselves . . . the grievances must contain the sort of information that the administrative system requires."). However, the grievance need not match the relief sought in litigation. *Id.* ("no administrative system may

- 3 -

demand that the prisoner specify each remedy later sought in litigation"). On the whole, the plaintiff's multiple grievances and medical requests alerted the defendants to Mr. McAdory's concern: that he continued to suffer back pain and that the treatments he received such as ice and pain pills had not helped.

The defendants contend that most of Mr. McAdory's reports about his condition were submitted as medical requests, not medical grievances. But that is exactly what the jail directed him to do when it responded to his initial grievances with "please submit a nurse sick call request to be seen in the clinic," and "this is a medical grievance. please submit a sick call request to see the doctor." Dkt. 37, Ex. A at Bates Number HRVA247. And again in response to his September 7, 2016, grievance complaining about continuing back pain, the jail responded, "fill out a medical request." *Id.* The defendants note that those responses "did not indicate that Plaintiff was not allowed to file grievances, that they wouldn't respond to his grievance, nor did they in any way indicate he could not grieve his complaints." Reply [40] at 4. The defendants further note that Mr. McAdory demonstrated his he understood the grievance system by filing multiple grievances complaining about the lack of care for a torn ligament including requesting an MRI. Motion [36] at 7. But the undisputed fact remains that in response to his grievances about a lack of relief for his back pain, the jail directed him to submit sick call requests, which is what Mr. McAdory did.

The defendants also note that the plaintiff failed to properly respond to their Rule 56.1 statements of fact by failing to support his denials with citations to evidence. Several of those statements of fact concern the training and manuals prisoners receive on the jail's grievance procedure. The defendants contend that by improperly denying the statements, Mr. McAdory admitted that he knew how to properly exhaust a grievance. But even accepting as true that the jail explained the grievance procedure to the defendant when he arrived, and that the numerous revisions were made available on kiosks, it is undisputed that after Mr. McAdory filed his August 29, 2016, grievance about his back pain and need for treatment, the jail told him to file his medical grievances as a medical request, and gave a similar response to his September 7, 2016, grievance. As the Supreme Court has noted, misleading statements about how to file a grievance make a grievance procedure unavailable to a prisoner, and excuse the need to exhaust. *See Ross*, 136 S. Ct. at 1859.

Finally, the defendants contend that Mr. McAdory failed to exhaust because he never appealed the jail's responses to his grievances. But, again, a prisoner need only exhaust those procedures that are available to him, and statements that mislead a prisoner can make grievance procedures unavailable to him. *See id.* The Winnebago County jail's grievance procedures were ever-evolving during Mr. McAdory's stay. The policies in place when Mr. McAdory arrived at the jail, when he fell, and when filed all of his grievances and most of his medical requests, did not set a deadline for an appeal. *See* Dkt. 37 at HRVA271-72. One of those two policies stated that appeals are available, but removed language from its predecessor that explained how to file an appeal. *Id.* HRVA272. None of the versions the defendants submitted make any mention of medical requests, or how they relate to medical grievances. As a result, even though most of the policies require that a prisoner appeal a medical grievance to exhaust it, the policies do not address what if anything to do in response to a denied medical request. Given that the jail directed him to submit his medical grievance as a sick call request, the lack of a deadline to

appeal a denied grievance, and the lack of evidence that denied sick call requests must be appealed, the defendants have not established that Mr. McAdory failed to exhaust a grievance policy that was available to him.

## CONCLUSION

For the reasons given, the defendants have not established that they are entitled to summary judgment on their affirmative defense of failure to exhaust. Accordingly, the motion [35] is denied.

Date: January 22, 2021          By: _____
                                    Iain D. Johnston
                                    United States District Judge